# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

In re:                                          Bankruptcy No. 11-31095
                                                Chapter 7

Rachelle Dawn Trieloff,

                            Debtor.
_____/
Gene Doeling, *as Bankruptcy Trustee,*

                            Plaintiff,

            vs.                                 Adversary No. 12-07012

Rachelle Dawn Trieloff,

                            Defendant.
_____/


# <u>MEMORANDUM AND ORDER</u>

On December 20, 2011, the Bankruptcy Trustee filed an objection to Debtor's

Claim of Exemptions.  Debtor responded to the objection on December 29, 2011, and

the Court held a hearing on the objection on January 18, 2012.  At the close of the

hearing, the Court granted the parties time to submit joint exhibits and took the

objection under advisement.  A short time later, the Trustee initiated this adversary

proceeding by complaint alleging that Debtor failed to disclose assets and made false

statements on her schedules.  During the pretrial planning and scheduling conference,

the parties agreed that the facts and issues raised at the hearing on the Trustee's

Objection to Claim of Exemptions were similar to those raised in the Complaint.

Consequently, the Court advised that it would consider the objection together with the

claims alleged in the adversary complaint at the time of trial.  The continuation of the

1

hearing on the Trustee's Objection to Claim of Objections and trial of this adversary

case took place on July 18, 2012. The following opinion constitutes findings of fact and

conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

I.    **FACTS**

Debtor Rachelle Dawn Trieloff earned her high school diploma in 1979 and a

four-year degree in Business Administration from Moorhead State University in 1983 or

1984. Her employment experience includes an internship with a United States Senator,

conference coordinating, event planning, bookkeeping, managing property and selling

real estate. She is currently employed with Wood Group as a technician. Her duties

include preparing documentation for permits related to the oil industry in western North

Dakota.

Debtor testified that she faced challenges with drug and alcohol abuse much of

her life. In 2009, Debtor received drug and alcohol treatment on several occasions.

She voluntarily accepted treatment on these occasions. Debtor stated that she has

been sober since June 2009; however, she is still residing in transitional housing where

she lives independently and alone. As part of the transitional program, Debtor was

allowed to pay only $200.00 to $400.00 per month rent, rather than $1,200.00 per

month which Debtor estimates is the average rate for similar housing in the Minot, North

Dakota, area.

In the early to mid-2000s, Debtor invested in real estate, primarily in Florida.

She testified that the market for real estate was strong in Florida in 2005, and she was

doing well with real estate sales. However, a year or two later, the market for the

property she purchased collapsed and secured creditors began to foreclose on the

2

property she purchased.  In 2008, Debtor petitioned for bankruptcy relief in Florida. According to Debtor, her case was eventually dismissed because she did not file the necessary documents.

In August 2011, Debtor began preparing the petition and schedules she eventually filed in this case.  While working on the bankruptcy forms, Debtor circled words which required additional study and researched forms, exemptions and other bankruptcy-related issues on the internet.

In late October 2011, she received mail forwarded to her from Florida which included a notice of a federal tax lien from the Internal Revenue Service (IRS).  She understood that the IRS could file a lien against any property she owned or would acquire.  Debtor testified that she thought petitioning for bankruptcy relief would stop or slow IRS collections and she did not want the IRS to garnish her wages.  She was concerned that the IRS might find out about her bank account.[1]  Therefore, she quickly finished preparing the petition, signed it[2] and promptly sent it to the Bankruptcy Court. Debtor prepared and filed the petition without the assistance of an attorney.  She did not hire counsel to assist her in the bankruptcy case until after the Meeting of Creditors,

---

[1] During the January 2012 hearing on the Trustee's Objection to Claim of Exemptions, the Trustee asked Debtor whether she was concerned the IRS would find out about her bank account. She acknowledged that she was afraid the IRS would take her wages and whatever she had including the bank account, but denied that this was the reason she failed to disclose it.

[2] On page 3 of the petition, Debtor signed the request for relief and dated the document October 18, 2011.  She acknowledged reading the sentence on page 3 of the petition stating: "I declare under penalty of perjury that the information provided in this petition is true and correct."  She signed the Declaration Concerning Debtor's Schedules and dated it November 6, 2011.
Debtor testified that she understood her promise to tell the truth.

3

which took place on December 16, 2011.

On November 14, 2011, an employee with the Bankruptcy Clerk of Court's office electronically filed Debtor's petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule B, Debtor disclosed that she possessed $3,200.00 in cash. After number 2 on Schedule B, which requests Debtor list financial accounts,[3] Debtor disclosed a Health Savings Account (HSA) in the sum of $300.00.[4] She did not disclose a checking or savings account, even though evidence received at trial and during the January 2012 hearing on the Trustee's Objection to Claim of Exemptions shows Debtor had an account with Wachovia/Wells Fargo for years before she petitioned for bankruptcy relief. Wells Fargo bank statements received as evidence reveal that the balance of Debtors account was $7,043.37 on the date of petition.

Likewise, Debtor did not list the patent she had acquired in 2004 for a foot support system she designed for her mother. Rather, she checked "none" after item number 22 on Schedule B, which asked her to list "patents, copyrights and other intellectual property."

On page 2 of the Statement of Financial Affairs (Doc. 1 at page 28), Debtor checked the boxes next to number 3. a. and b. indicating that she had not made any payments to any creditors for debts within 90 days before she filed her bankruptcy

---

[3] Number 2 on Schedule B requests Debtor to list the following: "Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives."

[4] Debtor testified that she did not receive regular statements with the balance of her HSA account. To get the balance of the account, she had to contact her employer.

case.  On page 3 of this statement (Doc. 1 at page 29), Debtor checked a box next to number 3. c. indicating that she had not made any payments within one year preceding the commencement of her bankruptcy case to or for the benefit of creditors who are or were insiders.  On page 5 of the Statement of Financial Affairs (Doc. 1 at page 31), Debtor checked a box next to number 10 indicating that she made no transfers of property within two years of commencing her bankruptcy case.

At the Meeting of Creditors held on December 16, 2011, the Trustee asked questions similar to those on the Statement of Financial Affairs.  After taking an oath to tell the truth, Debtor testified that she had not paid any unsecured creditor more than $600.00 during the 90 days before she filed for bankruptcy relief.[5]  Debtor denied making payments to any creditors.  Id.  She also denied transferring any assets to family members in the one year before she filed her petition.[6]

At the hearing on the Trustee's Objection to Claim of Exemptions held on January 18, 2012, Debtor testified that she sent $650.00 cash to Carlos Napolis (her

---

[5] Debtor testified:
Trustee: "Did you list all of your creditors on the schedules?"
Debtor: *"To the best of my knowledge."*
. . .
Trustee: "Have you made payments totaling $600.00 or more to any one of your unsecured creditors during the ninety days before you filed bankruptcy?"
Debtor: "*No.*"
Trustee: "Have you transferred any of your assets or any of your property to any other entity including giving like a bank a mortgage in your property or a security interest in your property during the ninety day period before you filed bankruptcy?"
Debtor: "*No.*"

[6] Specifically, the Trustee asked:  "Did you pay back or make payments to, of any money, to any of your relatives during the one year period before you filed your bankruptcy?" and "Have you transferred any of your assets to your family members in the last two years?"  Debtor's answer to both questions was "*no.*"

5

former fiancé) in a box with shoes that he had sent her that did not fit.  She sent this cash near the end of October 2011 to reimburse him for money spent on car services, transportation expenses and meals in May 2009, when she traveled from Florida to North Dakota.  She explained that she "did not know what the future would hold with the IRS" and just wanted her debt to him "off her conscience."  Debtor also testified that she gave $2,000.00 to her father, Orlin Mertz, from funds withdrawn from her Wachovia/Wells Fargo account on October 14 and 24, 2011, and November 9, 2011.[7] Her testimony at trial was consistent with these admissions, except that Debtor's testimony focused on only the $500.00 withdrawal from her bank account when the transfer to Carlos Napolis was discussed.

On Schedule J, Debtor claimed that her monthly rent or home mortgage payment was $1,200.00.  She also disclosed that she incurred lawn care and/or snow removal expenses of $160.00 per month.  Debtor did not write any information after question 19 on Schedule J, which provides:  "Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document."

At the hearing on January 18, 2012, Debtor testified that she spent only $200.00 per month for rent and that she had not incurred lawn care or snow removal expenses for October or November 2011.  At trial, Debtor clarified that she had incurred lawn care expenses of $40.00 per mowing, which occurred one time a week during the summer. She also clarified that her rent had been only $200 per month for the past two years up until two months ago when it was raised to $400 per month.  To explain the difference

---

[7] Debtor explained that her father did not have a lot of money, yet he spent more than $4,000.00 to move her from Florida to North Dakota to seek treatment.

6

between her actual expenses and the expenses noted on Schedule J, Debtor claims

that she understood Schedule J to be like a budget, in that she was required to

estimate her living expenses rather than disclose the exact sum she spent on living

expenses.

On November 22, 2011, after Debtor learned that her bank account had been

frozen and after the Trustee learned that she had a bank account via notification from

the bank, Debtor amended Schedule B to reflect the Wachovia/Wells Fargo bank

account with a balance of $7,043.37.  Her Amended Schedule B also shows cash on

hand totaling only $65.00.

Debtor maintains that her failure to include the bank account on her original

Schedule B and to accurately state the amount of cash on hand was simply an

oversight or misunderstanding.  She testified that she completed Schedule B in August

2011, when her bank account contained roughly $3,200.00, and that the sum disclosed

as cash on hand in her original Schedule B was a reference to the sum of money in the

Wachovia/Wells Fargo bank account.  She also testified that she neglected to update

the amounts listed on Schedule B to reflect the balance on the date she filed it.  A letter

of apology Debtor sent to the Trustee on November 19, 2011, is consistent with this

explanation.  See Exh. 9.

Conversely, the Trustee claims that this omission was an intentional failure to

disclose.  The Trustee suggests that Debtor possessed cash of $3,200.00 in addition to

the $7,043.37 in her bank account on the date her petition was filed and disputes

Debtor's claim that the $3,200.00 in cash was a reference to the money in the bank

account.  In support of this argument, the Trustee claimed that Debtor's decision to list

7

her HSA account on Schedule B is evidence that Debtor read and understood that all accounts must be disclosed on Schedule B. He also directed the Court's attention to Debtor's testimony at the Meeting of Creditors, during which she admitted to withdrawing roughly $3,000.00 from the bank within one month before she filed her petition and agreed with the Trustee when he asked her whether the $3,000.00 listed as cash on hand on her schedules was accurate.[8] See Exhs. 10 and 11.

The amended schedules Debtor filed on November 22, 2011, also included an amended claim of exemptions.[9] Specifically, Debtor amended Schedule C to claim that the Wachovia/Wells Fargo bank account and her car, bed, laptop, photos, clothing and jewelry were exempt. She also exempted $400.00 in an HSA account which had not been included on her Amended Schedule B, but was listed on her original Schedule B.

---

[8] Debtor testified:
Trustee: "Let's look at your bank statements . . . there are several withdrawals from your bank accounts of cash shortly before you filed bankruptcy."
Debtor: "*To pay bills with.*"
. . .
Trustee: "So we've got . . . $2804.00 taken out during what looks like the three weeks, roughly a month, prior to the bankruptcy filing."
Debtor: "*Okay.*"
Trustee: "So how much cash did you have when you filed bankruptcy?"
Debtor: "*Then it would have been probably $3000.00.*"
Trustee: "Cash?"
Debtor: "*Because I had taken that out, but you know I was buying groceries.*"
Trustee: "Well if you look at your bank records, there are lots of withdrawals for incidental expenses on those bank statements, I mean."
Debtor: "*Yeah, there is.*"
Trustee: "So would you agree with me then that the $3,000.00 that you listed in your original schedules in cash is accurate?"
Debtor: "*Yes.*"

[9] On her original Schedule C, Debtor did not claim any property exempt. See Exh. 1.

8

She claimed all these assets were exempt under 11 U.S.C. § 522(b)(2).

On December 20, 2011, the Trustee filed an Objection to Claim of Exemptions, asserting that Debtor intentionally failed to disclose the Wachovia/Wells Fargo account and arguing that the exemptions she claimed under section 522(b)(2) should be disallowed because Debtor did not identify a statutory basis for the specific items of property she claimed exempt.

Sometime after the Meeting of Creditors on December 16, 2011, Debtor hired an attorney to represent her in the bankruptcy case. With the assistance of her attorney, Debtor filed a response to the Trustee's Objection to Claim of Exemptions on December 29, 2011. On the same day, Debtor filed amended schedules disclosing the Wachovia/Wells Fargo account in the sum of $7,043.37, cash totaling $65.00, an HSA account with a balance of $400.00, and other assets. On her Amended Schedule C dated December 29, 2011, she claimed that the cash, the balance in the bank account and the HSA account were exempt pursuant to North Dakota statutes. At trial, the Trustee conceded that, but for the alleged bad faith in omitting assets from her petition, Debtor would be entitled to exempt the assets listed on the December 29, 2011, Schedule C amendments.

Debtor did not disclose the cash transfers to her father or her former fiancé on her original schedules or on either of the amendments. Likewise, her amended schedules do not include her patent, which Debtor claims has no value. She has never amended her Schedule J to reflect her actual living expenses on the date of petition.

On November 23, 2011, Debtor signed her 2010 Individual Income Tax Return. See Exh. 5. The return indicates that Debtor earned $2,435.00 in farm program

9

payments.  Debtor had not remembered receiving this income until she ordered

transcripts from the IRS to provide to accountants she hired to prepare her taxes.  She

did not disclose this income in her original petition and schedules and has not amended

her schedules to disclose it.

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction

Neither party disputes that this Court has jurisdiction over the Trustee's

Objection to Debtor's Claim of Exemptions or the adversary proceeding initiated by the

Trustee.  Likewise, neither party disputes that this Court has authority to enter a final

order.  This Court finds that it has jurisdiction under 28 U.S.C. §§ 1334 and 157 and

that it has authority to enter a final order in these matters.

### B.    Adversary Proceeding Seeking Denial of Discharge

In his Complaint, the Trustee argues Debtor should be denied a discharge

pursuant to 11 U.S.C. § 727(a)(2) because Debtor concealed property of the

bankruptcy estate with intent to hinder, delay, or defraud creditors or the bankruptcy

estate; and pursuant to 11 U.S.C. § 727(a)(4)(A) because Debtor made a false oath in

her bankruptcy filings.

Section 727(a) of the Bankruptcy Code provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

* * *

        (2) the debtor, with intent to hinder, delay, or defraud a creditor or
an officer of the estate charged with custody of property under [the
Bankruptcy Code], has transferred, removed, destroyed, mutilated, or
concealed, or has permitted to be transferred, removed, destroyed,

10

mutilated, or concealed—

> (A)  property of the debtor, within one year before the date of the filing of the petition; or

> (B) property of the estate, after the date of the filing of the petition;

> * * *

> (4) the debtor knowingly and fraudulently, in or in connection with the case—

> (A) made a false oath or account[.]

11 U.S.C. § 727(a).

Denying a debtor a discharge is a harsh remedy.  Allred v. Vilhauer (In re Vilhauer), 458 B.R. 511, 514 (B.A.P. 8th Cir.  2011).  Accordingly, section 727 is strictly construed in favor of the debtor.  Id.  Notwithstanding, a discharge in bankruptcy and the associated fresh start are privileges, not rights.  Bauer v. Iannacone (In re Bauer), 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)).  "The opportunity for a completely unencumbered new beginning is limited to the honest but unfortunate debtor."  Id.  The cost to the debtor for an unencumbered fresh start is minimal, but it includes honestly and accurately disclosing his or her financial affairs and cooperating with the trustee.  Id.; see also 11 U.S.C. § 521 (listing a debtor's duties in bankruptcy).

## 1.     11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) bars the entry of a discharge if a debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account.  To meet his burden under this subparagraph, the Trustee must prove that "(1) Debtor made a

statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case." Lincoln Sav. Bank v. Freese (In re Freese), 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011) (citation omitted). To prevail in an action seeking denial of discharge, the Trustee must prove each element by a preponderance of the evidence. In re Vilhauer, 458 B.R. at 514.

The Bankruptcy Code, through section 727(a)(4)(A), "requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." Korte v. U.S. Internal Revenue Serv. (In re Korte), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) (quoting Fokkena v. Tripp (In re Tripp), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)). "The debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions." In re Bauer, 298 B.R. at 357.

The proper functioning of the entire bankruptcy process is dependent upon debtors providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case so that parties in interest may evaluate debtors' assets and liabilities and appropriately administer the case. Jordan v. Bren (In re Bren), 303 B.R. 610, 613-16 (B.A.P. 8th Cir. 2004) (overruled on other grounds). Section 727(a)(4)(A) promotes veracity in the statements and schedules to help prevent creditors and the trustee from having to resort to independent fact-finding and investigation. Daniel v. Boyd (In re Boyd), 347 B.R. 349, 355 (Bankr. W.D. Ark. 2006). The disclosure requirement has implications beyond the administration of each individual bankruptcy case. "The failure to comply with the requirements of disclosure

12

and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole." See Nat'l Am. Ins. Co. v. Guajardo (In re Guajardo), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997).

The Trustee argues Debtor made several false oaths in her bankruptcy filings, including the omission of her bank account, income from farm program payments, her patent and cash transfers to her father and her former fiancé.  Debtor does not deny that she failed to disclose these assets.  The focus of her defense rests on alleged oversights related to the fact that she worked on the bankruptcy petition and schedules over a period of three months and her history of drug and alcohol abuse.

Debtor offered no testimony, expert opinions or other evidence establishing that her history with drug and alcohol abuse or any medical condition prevented her from reading or understanding the questions on the bankruptcy petition which she completed more than two years after achieving sobriety.  To the contrary, Debtor's testimony demonstrates that she read the petition questions and understood them in the same way an intelligent person with no law training might understand them.  She circled words which required additional study and researched forms, exemptions and other bankruptcy-related issues on the internet.  She acknowledged reading the sentence on page 3 of the petition stating: "I declare under penalty of perjury that the information provided in this petition is true and correct."  She admitted signing the petition and testified that she understood her promise to tell the truth.

In his questions to his client and in oral argument, Debtor's counsel suggested that his client's history with drug and alcohol abuse should influence the way this Court

13

views Debtor's failure to disclose her bank account, patent and cash transfers to her father and her former fiancé.  Counsel also suggested that Debtor is only capable of performing work that requires a great deal of supervision and that preparing the bankruptcy petition was beyond her abilities.

While it is most certainly true that debtors benefit from the advice of counsel when preparing and filing a bankruptcy petition and schedules, the advice of counsel would not and should not affect her answers to the petition questions and information at issue in this case or the Trustee's questions at the Meeting of Creditors.

Further, the Court finds that Debtor is a bright, articulate, well-educated woman, who found success in various professions throughout her life (along with financial difficulties), and continues to progress in her current job.  The fact that she performs administrative tasks requiring supervision in her current position and has a history of drug and alcohol abuse does not show incapacity or negate intent.  To the contrary, Debtor's ability to advance in various careers and to address exceptionally difficult personal challenges is more indicative of ability than disability.  Thus, while her success in addressing drug and alcohol abuse and her ability to succeed in a variety of professions is certainly impressive, it neither advances nor deters from her defenses to the Trustee's claims and is essentially irrelevant for the purposes of this Court's analysis of this case.  See Towle v. Hendrix (In re Hendrix), 352 B.R. 200, 208 (Bankr. W.D. Mo. 2006) (rejecting debtor's suggestion that her mental and emotional problems rendered her incapable of forming the requisite intent for denial of discharge because there was no expert testimony or records indicating debtor lacked the capacity to understand the questions on the schedules or the need for full disclosure and finding

14

that "[e]ven if the Court were to take Debtor's statements that she is under pressure

and depressed as true, these facts alone do not excuse Debtor from reviewing her

schedules to insure that they are complete and accurate.") (citation omitted).

Consequently, the Court will analyze the elements of the Trustee's claim under

section 727(a)(4)(A).

(1)  Debtor made a statement under oath.

A debtor's signature on the petition, made under penalty of perjury, is a

declaration which has the force and effect of an oath of the kind encompassed by

section 727(a)(4)(A).  In re Bren, 303 B.R. at 613; Cepelak v. Sears (In re Sears), 246

B.R. 341, 347 (B.A.P. 8th Cir. 2000).  In this case, Debtor signed the petition and

acknowledged reading the declaration on page 3 of her petition, stating that the

information provided in the petition was true and correct.  During the January 2012

hearing and at trial, she testified that she understood she was signing the petition under

oath.  She also swore to tell the truth at the Meeting of Creditors.  See Exh. 11.

Accordingly, the Court finds that Debtor's omissions from her schedules and her

testimony during the Meeting of Creditors are "statements under oath."  The Trustee

satisfied his burden of proof under the first element of section 727(a)(4).  See In re

Freese, 460 B.R. at 738-39.

(2)  The statement was false and (3) Debtor knew the statement was

false.

The petition and schedules Debtor filed on November 14, 2011, are not

accurate.  They do not include Debtor's bank account with Wachovia/Wells Fargo or

her patent, and they do not reference the cash transfers to Debtor's father or former

15

fiancé.  She knew about these assets and transfers on the date her bankruptcy case was commenced, but did not disclose them in her schedules or Statemeant of Financial Affairs.[10]

On Schedule J, Debtor claims she spends $1,200.00 per month in rent and $160.00 per month in lawn care or snow removal.  During the January 18, 2012, hearing and at trial, Debtor acknowledged that neither of these statements was correct on the date she filed her petition, and the $1,200 rent payment did not reflect what she had been paying the past two years.

Accordingly, the Court finds that Debtor made false statements that she knew were false on the date she signed the petition.  See In re Freese, 460 B.R. at 738-739 (finding that intentionally omitting assets from bankruptcy schedules is a false oath under section 727(a)(4)).

(4)  Debtor made the statement with fraudulent intent.

Next, the Court considers whether Debtor had the requisite fraudulent intent. The circumstances and the debtor's course of conduct may be essential in determining the debtor's subjective state of mind because of the improbability that the debtor will concede fraudulent intent.  In re Sears, 246 B.R. at 349-50.  Courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the

---

[10] The Trustee did not establish when Debtor learned about the farm program payments referenced on her tax return signed November 23, 2011, and the record is not clear in this regard.  Consequently, the Court finds that the Trustee did not meet his burden of proving that Debtor knew the omission of this payment was false at the time she filed her petition or intentionally made a false oath with regard to Debtor's omission of this asset on her schedules.

truth. Kaler v. Geller (In re Geller), 314 B.R. 800, 807 (Bankr. D.N.D. 2004).

Statements made with reckless indifference to the truth are regarded as intentionally

false. Id.; In re Korte, 262 B.R at 474.

The Trustee asserts that Debtor intentionally omitted her bank account, her

patent and the cash transfers to her father and her former fiancé from Schedule B and

the Statement of Financial Affairs.  With regard to her failure to disclose the

Wachovia/Wells Fargo bank account on her original Schedule B, Debtor claims that this

omission was inadvertent and that she actually disclosed the sum of money in her

account at the time she completed this section of the petition in August 2011 by listing it

as cash on hand.  She acknowledged that she should have updated her schedules

before filing them, but insists that she did not intend to defraud anyone by failing to do

so.

The explanation provided by Debtor, who was pro se at the time, is plausible.

The Trustee's suggestion that Debtor omitted the bank account from her Schedule B

because she was afraid the IRS would find out about the bank account and seize the

money is also plausible.[11]

---

[11] In late October 2011, Debtor received mail forwarded to her from Florida which
included a notice of a federal tax lien from the IRS.  She understood that the IRS could
file a lien against any property she owned or would acquire.  The notice regarding
federal tax liens prompted her to file her petition.  She testified that she thought
petitioning for bankruptcy relief would stop or slow IRS collections.  She did not want
the IRS to garnish her wages or seize her bank account.  During the January 2012
hearing on the Trustee's Objection to Claim of Exemptions, the Trustee asked Debtor
whether she was concerned the IRS would find out about her bank account. She
acknowledged that she was concerned the IRS would take her wages and whatever
she had including the bank account, but denied that this was the reason she failed to
disclose it.

Several factors weigh against the credibility of Debtor's explanation, however. First, Debtor apparently read the petition carefully enough to realize that she must disclose all financial accounts on Schedule B because she disclosed her HSA account on her original schedules. Yet, she omitted her bank account.

Second, when asked about her bank account and cash on hand during the Meeting of Creditors, she did not accurately respond to the Trustee's questions. At the time of the Meeting of Creditors, the Trustee apparently assumed that Debtor had withdrawn roughly $3,000.00 and possessed that cash on the date she filed her petition. The Trustee also assumed that, in addition to the cash, Debtor also had a bank account with a balance of more than $7,000.00 on the date of petition. Debtor acknowledged that she withdrew roughly $3,000.00 in cash, but did not explain that she had transferred $2,650.00 to her father and her former fiancé. Instead, she testified that she had taken the money out "to pay bills with" and buy "groceries." See supra note 8. When specifically asked whether she would agree with the Trustee that "$3,000.00 that you listed in your original schedules in cash was accurate," she responded "yes." See supra note 8. She did nothing to clarify that she only possessed a small amount of cash at the time her petition was filed because she gave most of it to her father and her former fiancé days or a few weeks before she filed her petition. To the contrary, she deliberately withheld information about these cash transfers during the Meeting of Creditors and attempted to convince the Trustee that the $3,200.00 cash on hand was spent on bills and groceries. In the January 2012 hearing and at trial, Debtor testified that the $3,200.00 was the balance of her bank account at the time she prepared Schedule B and she possessed little or no cash at that time. At best, Debtor's

18

testimony regarding her bank account at the Meeting of Creditors may be viewed as

hedging; at worst, it was deceptive.  Accordingly, the Court does not find Debtor's

explanation credible.

Even more troubling is the false testimony Debtor offered at the Meeting of

Creditors.  The Trustee asked two clear and direct question regarding whether Debtor

paid any money or transferred any assets to relatives.[12]  Her unequivocal response to

both of the questions was "no."  The Trustee also asked Debtor about transfers to

creditors within 90 days of filing her petition.  Again, her response was "no."  See supra

note 5.  At the January 2012 hearing and at trial, Debtor admitted providing incorrect

answers to the Trustee's questions.  Her testimony at the Meeting of Creditors, given

under oath, was knowingly false and fraudulently made, satisfying the Trustee's burden

of proving the fourth element of his claim under section 727(a)(4)(A).

In addition to the failure to disclose her bank account and cash transfers, Debtor

also failed to disclose the patent she had acquired in 2004 for a foot support system

she designed for her mother.  Debtor claims that her patent has only sentimental value

and that she has done nothing to market her invention.  At trial, she was reluctant to

turn it over to the Trustee because it reminded her of time she spent with her mother,

who is deceased.  She maintains that she omitted it from the petition because it has no

monetary value, and her intent was not to defraud the Trustee or creditors.

The Court does not have sufficient evidence before it to decide whether the

---

[12] Specifically, the Trustee asked:  "Did you pay back or make payments to, of
any money, to any of your relatives during the one year period before you filed your
bankruptcy?" and "Have you transferred any of your assets to your family members in
the last two years?"  Debtor's answer to both questions was "*no*."

patent has value or not, but even if the Court agrees that the patent has no monetary value, failure to disclose it is still a false oath.  A debtor may not escape denial of discharge under section 727(a)(4)(A) by claiming that omitted or falsely stated information pertained to a worthless asset.  Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984) ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious."); Fokkena v. Peterson (In re Peterson), 356 B.R. 468 (Bankr. N.D. Iowa 2006) ("Debtor has asserted that several omissions in his bankruptcy filings were de minimus or immaterial. However, debtors have an 'absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless.'" (quoting In re Kasden, 209 B.R. 239, 243–44 (8th Cir. BAP 1997)); Moreo v. Rossi (In re Moreo), 437 B.R. 40, 66-67 (Bankr. E.D.N.Y. 2010) (false oaths about assets of the estate, even if they are worthless or exempt, may be sufficient to warrant a denial of discharge).

Even if Debtor had not provided false testimony at the Meeting of Creditors, the omission of her bank account, patent and cash transfers together with the grossly inaccurate $1,200.00 per month rent and exaggerated $160.00 per month lawn care and snow removal figures are sufficient to show these statements and omissions were made with reckless disregard for the truth.  See In re Geller, 314 B.R. at 807 (courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth).

Also troubling is the fact that Debtor has never amended her schedules to

20

disclose her patent or the cash transfers to her father and former fiancé.  A debtor's

duty of disclosure requires updating schedules as soon as reasonably practical after he

or she becomes aware of any inaccuracies or omissions.  See In re Bauer, 298 B.R. at

357.[13]

For these reasons, the Court finds that Debtor intentionally omitted assets from

her petition, and these omissions equate to intentionally false statements under oath

pursuant to section 727(a)(4)(A).

(5) The statement related materially to Debtor's bankruptcy case.

For a false oath or account to bar a discharge, the false statement must be

material.  In re Freese, 460 B.R. at 738.  The threshold to materiality is fairly low.  In re

Korte, 262 B.R. at 474.  The subject matter of a false oath is "material" and sufficient to

bar discharge if it bears a relationship to the bankrupt's business transactions or estate,

or concerns the discovery of assets, business dealings or the existence and disposition

---

[13] Bankruptcy schedules provide information about a debtor's financial position to not only the trustee, but also to creditors, other interested parties and the court.  See Lewis v. Summers (In re Summers) 320 B.R. 630, 643 (Bankr. E.D. Mich. 2005) ("[T]he schedules and statement of financial affairs filed by a debtor are the core of all bankruptcy cases, upon which creditors, the courts, and other interested parties rely."); In re Edwards, 2003 WL 22016324, at *8 (Bankr. D. Vt. Aug. 26, 2003) ("The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees and creditors can rely.").  Providing updated or more accurate information to the bankruptcy trustee is, therefore, not a substitute for promptly amending schedules.  Bank of India v. Sapru (In re Sapru), 127 B.R. 306, 317 (Bankr. E.D.N.Y. 1991) (subsequent disclosure by a debtor is not sufficient to overcome the allegations of false oath or account).  Furthermore, the trustee should not be forced to ferret out a debtor's actual assets and expenses.  See In re Sears, 246 B.R. at 347; Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) ("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.").  Rather, a debtor has a duty to promptly amend his schedules.  See In re Bauer, 298 B.R. at 357.

of her property.  Id.  The omission of the bank account, patent and cash transfers unquestionably bears a relationship to the estate and its assets.

During her testimony, Debtor asserted that she did not disclose her patent on Schedule B because it had no monetary value.  To the extent she asserts that this omission is not material, the Court rejects this argument.  Profiting from the concealment is not the test for materiality.  As noted above, the test for materiality is whether the omission bears a relationship to Debtor's estate and its assets.  In re Korte, 262 B.R. at 474.  "It does not matter whether any specific monetary harm resulted from the false oath."  In re Tripp, 224 B.R. at 98.  While the value of omitted assets is relevant to materiality, the materiality analysis does not turn on value.  In re Sears, 246 B.R. at 347.  "An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent."  Id.

To the extent Debtor claims that failure to disclose her bank account is not material, the Court rejects this assertion as well.  The fact that a particular asset has equity that may be claimed as exempt (like her bank account) does not render an omission or falsity immaterial.  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (nondisclosure of $1,358.00 exempt tax refund was material because it was an asset of the estate and therefore bore a relationship to the estate).[14]  Debtors are obligated to

---

[14] See also Song v. Acosta (In re Song), 2011 WL 6934462, at *8 (B.A.P. 9th Cir. Sept. 30, 2011) (nondisclosure of a $1,980.00 monthly Social Security benefit was material even though they could be exempted); Wachovia Bank v. Voccia (In re Voccia), 2011 WL 351187, at *8 (Bankr. E.D. Va. Feb. 1, 2011) (the fact that a debtor could exempt omitted assets does not make false oaths about them immaterial); Woodard v. Peters (In re Peters), 2011 WL 9082, at *2 (Bankr. N.D. Tex. Jan. 3, 2011) (assets, whether exempt or not, are material to a bankruptcy case); Bear Rock Franchise Sys., Inc. v Hedlund (In re Hedlund), 2010 WL 2306672, at *3 (Bankr. D.

22

disclose their assets and transactions and leave to the trustee or creditors the impact on their estates. Fokkena v. Rohde (In re Rohde), 400 B.R. 230, 235 (Bankr. N.D. Iowa 2009).

Finally, the failure to disclose the cash transfers to her father and former fiancé are unquestionably material because the $2,650.00 transferred could have been used to pay unsecured creditors.

Reviewing all of the evidence, the Court concludes that the multiple omissions and inaccurate answers on her schedules and Statement of Financial Affairs rise to the level of reckless indifference to the truth. Her false answers at the Meeting of Creditors were knowingly and fraudulently made. The statements and omissions related materially to Debtor's bankruptcy case.

For these reasons, the Court concludes that Debtor knowingly and fraudulently made false oaths in connection with this case. The Trustee met his burden of proof under section 727(a)(4)(A), warranting a denial of discharge.

### 2.    11 U.S.C. § 727(a)(2)(A)

In his Complaint, the Trustee also seeks a denial of Debtor's discharge under

---

Neb. June 7, 2010) (same); Shamban v. Larson (In re Larson), 2010 WL 1633466, at *6 (Bankr. D. Mass. April 20, 2010) (same); Bernhardt v. Radloff (In re Radloff), 418 B.R. 316, 322 (Bankr. D. Minn. 2009) (same); Fokkena v. Rohde (In re Rohde), 400 B.R. 230, 235 (Bankr. N.D. Iowa 2009) (the failure to schedule an asset or to list a prepetition transfer is not immaterial merely because the asset might have been claimed exempt or because the transfer ultimately may not be recoverable under a trustee's avoidance powers); Buckeye Ret. Co. v. Bullough (In re Bullough), 358 B.R. 261, 268 (Bankr. N.D. Tex. 2007) (assets, whether exempt or not, are material to a bankruptcy case); Buckeye Ret. Props. of Indiana, LLC v. Tauber (In re Tauber), 349 B.R. 540, 560 (Bankr. N.D. Ind. 2006) (the materiality of an omission is not lessened by the fact that the assets transferred may have been exempt).

section 727(a)(2)(A), which bars the entry of a discharge if –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [the Bankruptcy Code], has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

To prevail under section 727(a)(2)(A), the Trustee must prove by a preponderance of the evidence: (1) the Debtor's action took place within one year before the petition date; (2) the act was that of Debtor; (3) the act amounted to a transfer, removal, destruction, mutilation, or concealment of property of the bankruptcy estate; and (4) the act was done with an intent to hinder, delay, or defraud a creditor or the trustee. See Georgen-Running v. Grimlie (In re Grimlie), 439 B.R. 710, 716, n.11 (B.A.P. 8th Cir. 2010); Kaler v. Huynh (In re Huynh), 392 B.R. 802, 810 (Bankr. D.N.D. 2008); Fokkena v. Juehring (In re Juehring), 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005). "Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors." Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford), 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) (citing Abbott Bank-Hemingford v. Armstrong (In re Armstrong), 931 F.2d 1233, 1239 (8th Cir.1991)).

The Trustee alleges that Debtor concealed assets of the estate. As detailed above, the Court concluded that Debtor transferred cash to her father and former fiancé within 30 days before she petitioned for bankruptcy, and she failed to disclose her bank

account and patent on Schedule B.  The expenses she listed for rent and lawn

care/snow removal were also inaccurate.  The evidence establishing Debtor's

knowledge and intent under section 727(a)(4) likewise establishes her fraudulent intent

under section 727(a)(2), warranting a denial of her discharge under section

727(a)(2)(A).

Moreover, the Court finds that there are several factors or "badges of fraud"

present in this case that also support the conclusion that Debtor intended to hinder,

delay or defraud under section 727(a)(2)(A).  The factors courts consider in determining

whether a debtor acted with intent to hinder, delay or defraud include: "(1) lack or

inadequacy of consideration; (2) family, friendship or other close relationship between

the transferor and transferee; (3) retention of possession, benefit or use of the property

in question; (4) financial condition of the transferor prior to and after the transaction; (5)

conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence

of trust or trust relationship; (8) existence or cumulative effect of pattern or series of

transactions or course of conduct after the pendency or threat of suit; (9) instrument

affecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift

to family member; and (11) general chronology of events and transactions under

inquiry."  In re Huynh, 392 B.R. at 810.

In this case, Debtor transferred cash to her father and former fiancé, both of

whom held a close relationship to Debtor.  Debtor did not retain any receipts or other

documentary evidence showing a debt to either her father or her former fiancé and

testified that neither had demanded repayment; rather, she felt morally obligated to

reimburse them.  Specifically, Debtor explained that her father was poor, yet he spent

25

more than $4,000.00 to move her from Florida to North Dakota to seek treatment.  Her testimony establishes that she wanted to give him some money before the IRS seized her assets.  Similarly, she wanted to pay back Carlos Napolis for the expenses he incurred in helping her move back to North Dakota before she was no longer able to do so.  Consequently, shortly before she petitioned for bankruptcy relief, she withdrew cash from her account and gave it to the two men.

The nature of the cash transfers together with her answers denying these transfers at the Meeting of Creditors show an attempt to keep the transfers secret.  Finally, the general chronology of events shows that Debtor's desire to avoid the collection efforts of the IRS prompted her to withdraw cash and give it to her father and her former fiancé.  Accordingly, the Court finds that this conduct satisfies the requisite intent under section 727(a)(2)(A).  The Trustee met his burden of proving his claim and cause of action under section 727(a)(2)(A).

The Court has considered all other arguments and deems them to be without merit.

Accordingly, the Court denies Debtor a bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(2) and (4).

### C.    Objection to Claim of Exemptions

On December 20, 2011, the Trustee objected to Debtor's claim of exemptions.  His objection was based on two grounds.  First, the Trustee objected to all of the exemptions Debtor claimed under 11 U.S.C. § 522(b)(2) because Debtor did not identify a statutory exemption for the specific items of property she claimed as exempt.  Debtor amended Schedule C on December 29, 2011, to claim exemptions under North

Dakota exemption statutes.  The Trustee conceded that the North Dakota statutes cited

on this amended Schedule C provide a valid basis for exempting the property listed.

Therefore, the Court overrules the Trustee's general objection to property the Debtor

sought to exempt under section 522(b)(2).

The Trustee also objected to Debtor's claim that $7,043.37 deposited in her

Wachovia/Wells Fargo bank account was exempt because she intentionally failed to

disclose this asset until after the Trustee had become aware of the asset via notification

from the bank.  Debtor denies that she exempted this bank account in bad faith.

The party asserting an objection to exemptions has the burden of establishing

bad faith by a preponderance of the evidence.  Bauer v. Iannacone (In re Bauer), 298

B.R. 353, (B.A.P. 8th Cir. 2003).  Bad faith is determined by examining the totality of the

circumstances.  Id. (citing Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 888 (8th Cir.

2002)); In re Barrows, 399 B.R. 506, 510 (Bankr. D. Minn. 2009).  "Concealment of an

asset generally supports a finding of bad faith, and will bar exemption of that asset."  In

re Barrows, 399 B.R. at 510 (citation omitted).

Debtor did not disclose the Wachovia/Wells Fargo bank account on the first

version of Schedule B she filed.  Debtor claims that her failure to disclose the bank

account was inadvertent and that she actually disclosed the sum of money in her

account at the time she completed this section of the petition in August 2011 by listing it

as cash on hand.  She acknowledged that she should have updated her schedules

before filing them, but insists that she did not intend to defraud anyone by failing to do

so.  In closing argument, Debtor asserted that her pro se status and background

mitigate her conduct and weigh against a finding of bad faith.

27

"The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (quoting In re Mascolo, 505 F.2d 274, 278 (1st Cir. 1974)).  Therefore, full and accurate disclosure is required of all debtors.  Id.  "Debtors bear an independent duty to provide accurate and complete information whether or not they have been assisted by counsel in preparing their schedules."  In re Barrows, 399 B.R. at 511 (citing In re Rolland, 317 B.R. 402, 414 (Bankr. C.D. Cal. 2004); In re Pettey, 288 B.R. 14, 20 (Bankr. D. Mass. 2003)).  This duty to disclose is ongoing.  In re Barrows, 399 B.R. at 511.

As noted above, the Court does not find Debtor's explanation credible.  Debtor's decision to list her HSA account on the original version of Schedule B demonstrates that she read the question on Schedule B and understood that she was required to list all financial accounts.  Nevertheless, she omitted her bank account.

When asked about her bank account and cash on hand during the Meeting of Creditors, Debtor did not accurately respond to the Trustee's questions.  The Trustee specifically asked whether Debtor would agree with him that the $3,000.00+ amount she listed in Schedule B as "cash on hand" was accurate, she responded "yes."  She did nothing to clarify that she only possessed only $65.00 in cash at the time her petition was filed because she gave most of it to her father and her former fiancé for expenses they incurred when trying to help her travel back to North Dakota.  To the contrary, she deliberately withheld information about these cash transfers during the Meeting of Creditors and attempted to convince the Trustee that the $3,200.00 cash on hand was spent on bills and groceries.  Later she testified that the $3,200.00 was

28

actually the balance of her bank account at the time she prepared Schedule B.

Further, when considering the omission of the bank account from Schedule B together

with the totality of circumstances in this case as summarized in detail above, the Court

finds that the Debtor's concealment of the bank account and her inconsistent

explanations regarding cash withdrawn from it constitute bad faith and bar exemption of

the funds in it.  As discussed above, Debtor's background and personal challenges

neither advance nor deter from the Court's analysis of the Trustee's claims; her pro se

status does not excuse her failure to disclose.  Accordingly, the Trustee's objection is

SUSTAINED.

## III.    CONCLUSION

For the reasons stated above, the Trustee's general objection to the exemptions

Debtor claimed under 11 U.S.C. § 522(b), which she later amended to claim

exemptions under North Dakota law, is OVERRULED.  The Trustee's Objection to

Debtor's claim that funds in her bank account are exempt is SUSTAINED.  Debtor's

exemption of $7,043.37 for funds deposited in the Wachovia/Wells Fargo bank account

on the date of petition is DISALLOWED.  Debtor's bankruptcy discharge is DENIED

pursuant to 11 U.S.C. § 727(a)(2) and (4).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this 2nd day of August, 2012.

 /s/Shon Hastings                                    
Shon Hastings, Judge
United States Bankruptcy Court